IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

GLENDON GILBERT,                    *

    Plaintiff,                      *

vs.                                 *    CASE NO. 4:25-cv-230 (CDL)

CSX TRANSPORTATION, INC.,           *

    Defendant.                      *

O R D E R

While working in a supervisory role for CSX Transportation, Glendon Gilbert injured his back when lifting a hydraulic pump from the bottom bin of a trailer.  Gilbert brings this negligence action against CSX under the Federal Employers' Liability Act, ("FELA"), 45 U.S.C. § 51, *et seq*.  Pending before the Court is CSX's motion for summary judgment.  For the reasons set forth below, the Court grants the motion (ECF No. 28).

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing

party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Gilbert, the record reveals the following facts.

Glendon Gilbert began working for CSX in 2019 as a roadway mechanic. After approximately two and a half years, he was promoted to a supervisory role as a parts manager. In that role, Gilbert's responsibilities included managing payroll, approving parts orders, and ensuring proper equipment use and workplace safety. Unlike the employees he supervised, Gilbert's primary duty was not to perform manual labor, but to oversee operations and ensure that employees complied with CSX's safety rules, which applied to him as well. Gilbert testified that he would not perform, or permit his employees to perform, any task he believed to be unsafe.

In 2022, Gilbert supervised multiple teams consisting of two roadway mechanics, a parts mechanic, and a manager, as they traveled to various job sites in different states to maintain railroad equipment. These crews transported parts in a tractor trailer outfitted with shelving along the walls and a central

2

walkway between the shelves.  As part of his duties, Gilbert oversaw the organization of the trailer by directing the parts mechanic on how to properly organize it.  Parts often became dislodged during transport, and the trailer could be left in disarray.  Gilbert Aff. ¶ 6, ECF No. 30-1.  Gilbert stated that he reported these conditions to his supervisors and expressed concerns about the ability to secure parts and to move heavy items safely within the trailer.  *Id.* ¶¶ 7, 19-21.  He also suggested the use of a rail or lift system to assist with moving heavy objects, noting that the existing lift crane was located at the front of the trailer and did not extend to all areas of the trailer. *Id.* ¶¶ 21-22.

In February 2022, while supervising a crew in Talbotton, Georgia, Gilbert accompanied two mechanics into the parts trailer to identify parts that needed to be returned.  The trailer was in disarray, with items having fallen from the shelves onto the floor. *Id.* ¶ 9.  Gilbert sought to check the serial numbers on hydraulic pumps located in a bottom bin at the back of the trailer.  He estimated that each pump weighed between eighty and one hundred pounds.  Because lifting objects of this size was expected of its employees, CSX provided safety training on proper lifting techniques.  Gilbert testified that he had lifted similar objects "many times before."  Gilbert Dep. 176:9-13, ECF No. 28-3.

Although two mechanics were present in the trailer, Gilbert did not request assistance. He believed the task required only one person and that space constraints in the trailer did not allow more than one person to access the bin where the pumps were stored at the same time. Gilbert Aff. ¶ 14. While kneeling, Gilbert moved one of the four pumps to the edge of the floor-level bin. The bin was equipped with a two-inch hinged lip designed to fold down to allow items to be slid out rather than lifted over the edge. Gilbert stated that the hinge was bent and the lip did not open. *Id.* ¶ 13. He then squatted down and lifted the pump as straight as he could over the lip, describing the movement as an "awkward lift." Gilbert Dep. 182:14-19. During this lift, Gilbert, who had a history of back pain dating back to 2005, injured his back.

After the incident, Gilbert remained at work while the two mechanics who were present removed the remaining pumps from the bin without incident. Gilbert continued working for CSX until he underwent back surgery in December of 2022.

## DISCUSSION

Gilbert brought this claim for negligence under FELA, asserting that CSX breached its duty to provide a reasonably safe workplace by failing to supply adequate equipment and personnel to secure parts during transport and to move heavy objects within the trailer. CSX argues that its duty of reasonable care did not

4

require it to provide updated or additional equipment and, even if it did, that Gilbert's injury was not reasonably foreseeable.

FELA provides a cause of action against railroads for an employee's "injury or death resulting in whole or in part from [the railroad's] negligence." 45 U.S.C. § 51. Thus, to survive summary judgment, Gilbert "must demonstrate that a question of fact exists concerning whether the employer's negligence played a part, however slight, in the employee's injuries." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1157 (11th Cir. 2012).

Gilbert contends that summary judgment is inappropriate because there is a genuine dispute as to whether CSX's alleged failure to provide adequate equipment to secure parts and move heavy objects contributed to his injury. But "the basis of [a railroad's] liability is [its] negligence, not the fact that injuries occur." *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653 (1947). Therefore, the Court must first determine whether Gilbert has produced evidence from which a reasonable jury could conclude that CSX "fail[ed] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) (quoting *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 118 (1963)).

"A railroad has a duty to use reasonable care in furnishing its employees with a safe place to work." *Atchison, Topeka & Santa*

*Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987).  But that duty does not require a railroad "to furnish the latest, best, and safest appliances, or to discard standard appliances upon the discovery of later improvements, provided those in use are reasonably safe and suitable."  *Chicago & N.W. Ry. Co. v. Bower*, 241 U.S. 470, 473-74 (1916).  If a railroad "has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then [it] is not required to do anything to correct [the] condition."  *CSX Transp., Inc.*, 564 U.S. at 703 (quoting *Gallick*, 564 U.S. at 118 n.7) (first and third alterations in original).

Gilbert produced evidence that he reported to his supervisors that parts in the trailer could become dislodged during transport and that he believed additional equipment could improve the ability to secure parts and move heavy items.  But, when viewed in light of his testimony, Gilbert's complaints do not establish that CSX had a reasonable basis to anticipate that these conditions would result in injury.  Gilbert testified that lifting objects weighing between eighty and one hundred pounds was expected of employees and that he had performed such lifts "many times before."  Gilbert Dep. 176:9-13.  He further testified that he did not consider the task to require assistance and did not request help from the two mechanics who were present.  And despite his characterization of the parts trailer as a safety concern due to the location of heavy

objects and lack of equipment, Gilbert acknowledged that he would not perform, or permit his employees to perform, tasks he believed to be unsafe. His testimony confirms that, after the incident, Gilbert remained at work while the two mechanics he was supervising removed the remaining pumps from the same bin without incident. Thus, the undisputed evidence establishes that lifting the pump that Gilbert lifted when he was injured was a necessary part of an employee's job description. Moreover, no evidence exists from which a reasonable jury could conclude that this job duty was inherently unsafe. To the contrary, the evidence establishes it was an ordinary and typical part of one's employment. Expecting an employee in this line of work to lift objects weighing eighty to one hundred pounds certainly was not negligence on the part of the railroad. As to the bent hinged lip, which arguably made the lift more challenging, there is no evidence that Gilbert reported that specific condition to CSX.

Gilbert has identified conditions that he believed CSX could have improved. "The test [for liability, however,] is not whether the tools to be used and the place in which the work is to be performed are absolutely safe, nor whether [CSX] knew the same to be unsafe, but whether or not [CSX] has exercised reasonable care and diligence to make them safe." *Atl. Coast Line R. Co. v. Dixon*,

7

189 F.2d 525, 527 (5th Cir. 1951).[1] While Gilbert points to "other, arguably more advanced methods" that could have been used to secure parts or move heavy objects, the record does not show that the "method in use by [CSX] was [] an inherently unsafe one." *Soto v. S. Pac. Transp. Co.*, 644 F.2d 1147, 1148 (5th Cir. 1981). Simply put, the Court finds that Gilbert has not produced evidence from which a reasonable jury could find that CSX breached its duty to provide a reasonably safe workplace.[2] Accordingly, summary judgment is granted in favor of CSX.

CONCLUSION

For the foregoing reasons, CSX's motion for summary judgment (ECF No. 28) is granted.

IT IS SO ORDERED, this 5th day of May, 2026.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[2] In light of this finding, it is unnecessary to address causation, *i.e*, whether CSX played a part in contributing to Gilbert's injuries.

8